UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL O. RICHARDSON JR.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 1:26-cv-02378-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DENY DEFENDANT'S CROSS MOTION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Docs. 16, 18)** |

## I. Introduction

Plaintiff Virgile Richardson Jr. seeks judicial review of a final decision of Defendant Commissioner of Social Security denying his application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do not support the Agency's non-disability finding.

## II. Procedural Background

The ALJ set forth the procedural background as follows:

> On January 7, 2022, the claimant filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 5, 2021. The claim was denied initially on July 14, 2022, and upon reconsideration on March 10, 2023. Thereafter, the claimant filed a written request for hearing, which the agency received on March 16, 2023 (20 CFR 404.929 et seq.). The claimant appeared and testified at a hearing (20 CFR 404.936 (c)) held on January 25, 2024, in Fresno California. Ronald Hatakeyama, an impartial vocational expert, also appeared at the hearing. The hearing was postponed for the claimant to obtain representation (Exhibit 11B). The claimant appeared and testified at a hearing in person (20 CFR 404.936 (c)), on October 3, 2024, and Fresno, California. Susan

> Green, an impartial vocational expert, also appeared at the hearing. Although informed of the right to representation the claimant chose to appear and testify without the assistance of an attorney or other representative. The claimant appeared and testified at a supplemental hearing in person (20 CFR 404.936(c)) on May 1, 2025 in Fresno, California. Cheryl Chandler, an impartial vocational expert, also appeared at the hearing. Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.

AR 15.

On May 22, 2025 the ALJ issued an unfavorable decision. AR 12–31. On January 29, 2026, the Appeals Council denied review. AR 1–6. On March 27, 2026, Plaintiff filed the instant complaint.

### III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.

"This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. See Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate

nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). However, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and post hoc rationalizations are not to be considered. See SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). See Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). Moreover, the Court's review is limited to the reasons actually cited by the ALJ in his decision. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.")

## IV. The Five Step Sequential Evaluation Process

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or

any other substantial gainful employment that exists in the national economy. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. See 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See, Tackett v Apfel, 180 F.3d 1094 at 1098-99 (9th Cir. 1999); see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. See Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. See id. at 954. If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy taking into account the claimant's residual functional

capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick v. Chater, 157 F.3d 715 at 721 (9th Cir. 1998); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing [*4] in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Importantly, "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984); see Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980) (testimony of vocational expert must be reliable in light of medical evidence in order to qualify as substantial evidence).

Further, when a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). As stated above, "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that "The claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 5, 2021 through his date last insured of March 31, 2025." AR 17.

At step two, the ALJ found that, "Through the date last insured, the claimant had the following severe impairments: morbid obesity, disorder of the lumbar spine, lumbar disc arthropathy and disc herniation at L1-L2, L4-L5, disorder of the cervical spine, herniation at C6-C7, right shoulder disorder, mild acromioclavicular (AC) joint degenerative arthritis, obstructive sleep apnea (OSA), disorder of the right knee, moderately severe medial and femoral patellar compartment osteoarthritis, varus deformity, and widening of the lateral compartment and lateral compartment osteoarthritis (20 CFR 404.1520(c))." AR 17-18.

At step three, the ALJ found that, "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." AR 18.

Prior to step four, the ALJ evaluated Plaintiff's RFC and concluded as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift and carry, push and pull, 20 pounds occasionally and frequently 10. The claimant can stand and walk for 4 hours out of an 8-hour workday and has no limitations sitting. The claimant can occasionally climb, stoop, crouch but is precluded from climbing ladders, ropes and scaffolds or kneeling and crawling. The claimant cannot work in hazardous work environments, especially anything requiring good to excellent balance such as working in unprotected heights, operating faster dangerous machinery or driving commercial vehicles. The claimant can occasionally reach overhead with the bilateral upper extremities. The claimant should avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation. The claimant requires a sit and stand option where they would not leave the workstation and would not be off task. The claimant can use a cane for walking greater than 20 minutes.
>
> AR 20.

At step four, the ALJ found "The claimant has no past relevant work." AR 24.

At step five, relying on the VE's testimony, the ALJ found that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of

making a successful adjustment to other work that existed in significant numbers in the national economy." AR 25. Specifically, the jobs identified by the VE were: Cashier II, Marker, and Routing Clerk. AR 25.

Accordingly, the ALJ concluded that "The claimant was not under a disability, as defined in the Social Security Act, at any time from September 5, 2021, the alleged onset date, through March 31, 2025, the date last insured (20 CFR 404.1520(g))." AR 26.

## VI. Issue Presented

Plaintiff asserts three claims of error, which he describes as follows:

> Issues discussed herein are that the ALJ erred in: 1- failing to develop the record by obtaining a consultative examination and ensuring that the record was otherwise complete (hereinafter Claim 1); 2- applying the wrong age category (hereinafter Claim II); and 3) arriving at an RFC that was not supported by substantial evidence (hereinafter Claim III).

MSJ at 2–3

For the reasons stated below, the undersigned finds that substantial evidence and applicable law do not support the Agency's non-disability finding because the ALJ failed to properly develop the record to ensure that the record was complete.

### A. Claim I (Failure to Develop the Record)

#### 1. Relevant Law

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d at 1288 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.") (citation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.") (citation omitted)

(emphasis added). However, the ALJ's duty to conduct an appropriate inquiry is triggered only when there is "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (citations omitted). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, [*7] or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted).

Where the claimant appears without representation, the ALJ "must be especially diligent in exploring for all the relevant facts." Id.; accord Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003).

Finally, a specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

The regulations specifically contemplate an examination where "[t]he additional evidence needed is not contained in the records of [the claimant's] medical sources," or where "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [his] ability to work, but the current severity of [the] impairment is not established." 20 C.F.R. § 404.1519a(b)(1), (4).

**2. <u>Analysis</u>**

ALJ Stewart presided over all three hearings. Plaintiff appeared without representation at all three hearings.[1]

The first hearing was held on January 25, 2024. See Supplemental AR, Doc. 15 (AR 824–

[1] Of note, a supplement to the Administrative Record was filed on July 15, 2026. Doc. 15. It contains the transcripts of the first and second hearing, while the third transcript is in the original Administrative Record.

837). A second hearing was held on October 3, 2024. Id. at AR 812–823. Lastly, a third hearing was held on May 1, 2025. AR 32–48.

Plaintiff begins his argument as to Claim I as follows:

> One means of satisfying that duty is a consultative examination. 20 C.F.R. § 404.1545(a)(3); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). The regulations specifically contemplate an examination where "[t]he additional evidence needed is not contained in the records of [the claimant's] medical sources," or where "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [his] ability to work, but the current severity of [the] impairment is not established." 20 C.F.R. § 404.1519a(b)(1), (4). The state-agency reviewers had already invoked the first ground, twice finding that a consultative examination was "required" because "[t]he additional evidence needed is not contained in the records of the individual's medical sources." (R.54, 73).
>
> The ALJ likewise recognized that the record was inadequate. At the January 25, 2024 hearing, she told Plaintiff he was "missing about two years of records," stated that she was "going to be ordering some consultative exams," and continued the hearing "in order to get updated records and get the CEs." (R.826–827). She later explained that the need for an examination would depend on those records: "once I see those, I'll be able to tell if I need to send you out. If there's enough imaging, then I won't. If there's nothing recent, then I can send you out." (R.835). She closed on the same terms: "Once I get that evidence, I'll decide if we need to … see another doctor." (R.836). At minimum, the ALJ thus recognized that a consultative examination would be necessary if the updated evidence remained inadequate.
>
> The problem was not limited to Plaintiff's back or knees. When the ALJ asked about other issues, Plaintiff identified three pending workups the agency lacked: a new orthopedic-surgery referral (R.834), a repeat sleep study for obstructive sleep apnea (R.835), and an evaluation for carpal tunnel syndrome, which he said caused difficulty gripping and dropping objects. (R.835). A September 30, 2024 development contact confirmed that the agency's records still extended only through March 2024 (R.167), and at the October 3, 2024 hearing the ALJ again acknowledged that the record "only [went] through March" and needed updating. (R.815, 822). Yet after more than nine months, she still had not scheduled a consultative examination.

MSJ at 4-5.

Quoting from the transcript supports Plaintiff's point. The relevant transcript is taken from the first hearing dated January 25, 2024—See Supplemental AR, Doc. 15 (AR 824–837). It reads as follows:

> ALJ: Her name is Ms. Tamara Brown. Okay. First of all, Mr. Richardson,

> you're missing about two years of records.
> CLMT: Okay.
> ALJ: So, I'm going to go over with you those records so we can get them. I'm also going to be ordering some consultative exams and I want you to know, you do have a right to an attorney.
> CLMT: Okay.
> ALJ: We are going to be continuing this in order to get updated records and get the CEs, so you'll have plenty of time to look for an attorney if you'd like one.
>
> AR 826–27. (emphasis added).

Here, the ALJ clearly indicates that she will obtain the missing records and obtain a consultative exam (hereinafter "CE").

After a discussion of Plaintiff's past work, the testimony continues at AR 833:

> Q: And have you had treatment anywhere else since September of 2021? Have you been to an urgent care? Have you been hospitalized? Imaging? Have you had any X-rays, anything like that?
> A: Yes, ma'am, at they were all done at Clovis Community Hospital. I had X-rays on -- or MRI on my back and then I've had X-rays on my shoulders.
> Q: Okay. So, we can update those records just to see. And in regards to some of the problems you're having, chronic pain, back pain, neck pain, pain in your knees, have they, have they done X-rays or MRIs of those areas of your body?
> A: Yes, ma'am.
> Q: Okay. And when is the most -- do you know when those were done?
> A: I want to say about the first, the first of last year, around March, February.
> Q: Okay.
> A: Was the last, last ones that I've done, I believe.
> Q: Okay. And anyone -- have they referred you to ortho surgery or anything like that?
> A: Yes, they're -- we just started that this, this year because the doctor that I had, she ended up moving and so now, I'm with a new doctor and he's looking over all the files and stuff and so he's planning -- he's getting me out, you know, little by little because, you know, it would be chaos. Plus, I don't have transportation, so my sister has been driving me around too, so I'm trying to get everything grouped together when they do that.
>
> AR 833-34

After a discussion not at issue here, the hearing transcript continues at AR 835:

> Q: Okay. So, we're updating those records. Then once I see those, I'll be able to tell if I need to send you out. If there's enough imaging, then I won't. If there's nothing recent, then I can send you out. Do you have any other

> issues besides the pain that you're having in the back and the neck and the knees?
> A: Yes, ma'am. We got -- I'm going to be doing a sleep study again for sleep apnea
> Q: Okay.
> A: And then I'm also -- I just got referred out. They sent the referral out this past month. I'm going to check out my hands for <u>carpal tunnel</u> stuff because I can't grip stuff good and I drop things. And I got pain in my hands. And that's the next one that I'll be going.
> Q: Okay. I don't, I don't need any more information from you. <u>This will be continued</u>. I just -- I do need to make sure that we have your correct phone number. Has anything changed?
>
> AR 835. (emphasis added).

Importantly as to this Claim, the ALJ discussed Plaintiff's lumbar spine MRI and his right knee X-ray.

First, as to Plaintiff's lumbar spine MRI:

> MRI of the lumbar spine in January 27, 2023 revealed <u>moderate to severe</u> loss of disc space height at L one-L2 with probable mild retrolisthesis and mild to <u>moderate</u> loss of disc space height at L4-L5 and L5-S1. There was transitional anatomy at the lumbosacral junction with a rudimentary disc space at the S1-S2. The claimant had small diffuse disc bulges at L one-2, L4-5, and L5-S1 with no central canal narrowing and mild narrowing of the subarticular zones. There was <u>moderate</u> bilateral foraminal stenosis at L5-S1. The impression was the above findings and no acute fracture and loss of lumbar lordosis which could be seen in the setting of a muscle spasm (Exhibit 10F/94-95).
>
> AR 22 (emphasis added).

Second, as to the X-ray of Plaintiff's right knee:

When addressing Plaintiff's knee, although the ALJ did not cite the imaging specifically, elsewhere in the record an X-ray of the knee from October 2022 is referenced (AR 74), which the ALJ essentially quoted at step two in finding a severe knee impairment as follows:

> disorder of the right knee, <u>moderately severe</u> medial and femoral patellar compartment osteoarthritis, varus deformity, and widening of the lateral compartment and lateral compartment osteoarthritis.
>
> AR 18 (emphasis added).

As to these two impairments, it clearly appears that the ALJ should have further developed the record. To begin, the ALJ did express this intention at the January 2024 hearing. Couple that with the January 2023 lumbar spine MRI showing moderate to severe loss of disc space height at L1-L2 and moderate bilateral foraminal stenosis at L5-S1, along with mild findings (AR 22), and the right knee X-ray from October 2022 which showed moderately severe medial and femoral patellar compartment osteoarthritis, varus deformity, and widening of the lateral compartment, and lateral compartment osteoarthritis. AR 18, 74. Importantly, both the lumbar spine MRI and the knee X-ray postdated Dr. Stoltz's CE dated June 2, 2022. AR 23, 514. As well, Dr. Stoltz's CE occurred toward the beginning of the relevant period, a period beginning September 5, 2021 and going through March 31, 2025. AR 17.

Granted, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." See Owen v. Saul, 808 F. App'x 421, 423 (9th Cir. 2020). However, a 3-year gap between the most recent medical opinion, whether it be by a state agency medical consultant or a consultative examiner, and the hearing decision, is significant. The ALJ seemed to recognize this at the first hearing when noting the need to obtain two years' worth of missing evidence along with ordering another CE.

In the Response, Defendant states: "Here, there was no ambiguity or inadequacy in the record as to the period under review." Resp at 7

Defendant emphasizes:

> Moreover, holding the record open to schedule another consultative examination would not have been useful in assessing Plaintiff's functioning during the period in question because the ALJ decision was issued almost two months after the March 2025 date last insured. Plaintiff has not shown that the record before the ALJ was too ambiguous or inadequate to allow for a proper evaluation of this claim. (emphasis added). Resp at 7

However, Plaintiff's following response is more instructive and persuasive:

> The Commissioner contends there was "no ambiguity or inadequacy in the record as to the period under review." (Def.'s Br. at 7). The record refutes that on the Commissioner's own authority. The duty to develop is "triggered ... when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001), and "the ALJ's own finding that the record is inadequate ... triggers a duty to conduct an appropriate inquiry," Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ made that finding. She told Plaintiff he was "missing about two years of records," stated she was "going to be ordering some consultative exams," and continued the hearing "to get updated records and get the CEs." (R.826-827). A development contact months later confirmed the records still ran only through March 2024 (R.167), and at the next hearing the ALJ again acknowledged the record "only [went] through March." (R.815, 822). If the duty was The Commissioner contends there was "no ambiguity or inadequacy in the record as to the period under review." (Def.'s Br. at 7). The record refutes that on the Commissioner's own authority. The duty to develop is "triggered ... when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001), and "the ALJ's own finding that the record is inadequate ... triggers a duty to conduct an appropriate inquiry," Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ made that finding. She told Plaintiff he was "missing about two years of records," stated she was "going to be ordering some consultative exams," and continued the hearing "to get updated records and get the CEs." (R.826-827). A development contact months later confirmed the records still ran only through March 2024 (R.167), and at the next hearing the ALJ again acknowledged the record "only [went] through March." (R.815, 822). If the duty was not triggered where the adjudicator herself declared the record inadequate and announced she would develop it, it is difficult to see when it would be. Reply at 3-4

Specifically, the pathology in both the MRI and X-Ray reports referenced above were serious enough to warrant updated exams. In support is the functional implications of moderate to severe loss of disc height and moderate to severe medial and femoral patellar compartment osteoarthritis.

At this point, it is worth noting again, “When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts.” Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff adds the following to his argument:

> The problem[2] was not limited to Plaintiff's back or knees. When the ALJ asked about other issues, Plaintiff identified three pending workups the agency lacked: a new orthopedic-surgery referral (R.834), a repeat sleep study for obstructive sleep apnea (R.835), and an evaluation for carpal tunnel syndrome, which he said caused difficulty gripping and dropping objects. (R.835). A September 30, 2024 development contact confirmed that the agency's records still extended only through March 2024 (R.167), and at the October 3, 2024 hearing the ALJ again acknowledged that the record "only [went] through March" and needed updating. (R.815, 822). Yet after more than nine months, she still had not scheduled a consultative examination.

MSJ at 5.

Specifically, as to carpal tunnel, Plaintiff argues:

> The only later evidence bearing on Plaintiff's hands was a single August 2, 2024 primary-care note assessing findings "likely consistent with carpal tunnel," prescribing a wrist splint, and referring Plaintiff to physical therapy that never occurred. (R.807, 818). There was no imaging, nerve-conduction study, or functional assessment of his hands. Thus, whatever "enough imaging" may have existed to avoid re-examining Plaintiff's back or knees, none existed for his hands. By the ALJ's own stated criteria, this was a case to "send [him] out." Instead, the hearing was delayed for months without meaningful development of that impairment.

MSJ at 5.

In fairness however, it was arguably Plaintiff's doctor and not the ALJ who had the primary obligation to develop the record further as it pertains to Plaintiff's carpal tunnel and sleep apnea. Plaintiff's doctor ordered neither. Rather, Plaintiff's doctor ordered physical therapy and as of the second hearing on October 3, 2024, Plaintiff indicated physical therapy was scheduled for two weeks later (AR 814). And, as of the third hearing in May 2025, Plaintiff still had not scheduled physical therapy.[3]

Notwithstanding, the ALJ nevertheless failed to properly develop the record. As a result, it

---

[2] "The problem" ostensibly refers to the failure to order an updated CE.

[3] See SSR 17-4 ("Although we take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims."). The ALJ expressed the intention to update the record concerning carpal tunnel, and did update it with the only record that existed, namely the referral to PT.

is not clear that the ALJ's error was inconsequential to the ultimate non-disability finding, thus the error is not harmless. Remand is therefore required.

### B. Claims II and III

Because the undersigned is recommending Remand as to Plaintiff's first claim, the Court need not reach Plaintiff's additional two claims. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); see also Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## VII. Conclusion

Because substantial evidence and applicable law do not support the Agency's non-disability determination, Remand is appropriate for further development of the record. See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (noting that, generally when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.).

## VIII. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, be **GRANTED.**
2. Defendant's Cross Motion, ECF No. 18, be **DENIED.**
3. That this action be **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with these Findings and Recommendations.

4. That the Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

## IX. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **November 11, 2026**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE